Good morning, Illinois Appellate Court, 1st District. Court is now in session, the 4th Division, Justice Robert E. Gordon presiding, case number 1-7-1145, Peeper v. Duane Towns. Good morning to all. Would the lawyers please introduce themselves to the court? Hi, my name is Aliza Kaliske from the Office of the State Appellate Defender on behalf of Duane Towns. Good morning, I'm Assistant State's Attorney Krista Peterson. I represent the people of the state of Illinois in this matter. Alright, the appellant, do you want to reserve some time for rebuttal? Yes, please, about 5 minutes. Okay, you'll have 15 minutes in total, so let's proceed. Alright, thank you. May it please the court, again, my name is Aliza Kaliske from the Office of the State Appellate Defender on behalf of Duane Towns. We raised two issues in our brief. Today, I'm planning to focus on the first issue, whether the state proved Towns guilty of aggravated kidnapping under the aspartation theory that it charged. However, I'm happy to answer questions about either issue. So the state charged Duane Towns with aggravated kidnapping under an aspartation theory. The language of the statute requires the state to show that by force or the threat of use of force, the defendant carried TM from one location to another with the intent to secretly confine that person. The evidence here showed that TM was asleep when Towns got into an unlocked car and that she slept through him driving the car to a vacant lot. She did not wake up until he parked the car. At that point, she saw a gun in her face and thought that she was dreaming, so she put her head back down and he had to tap her on the shoulder to wake her up. Ms. Kaliske, oh, I'm sorry, we're asking questions at the end. Never mind, go ahead, keep going. I'll wait. I'll wait patiently. So because the evidence showed that TM slept through being carried from one place to another, no threat, no force or threat of force was used to accomplish the aspartation. And we are asking this court today is to answer the legal question of whether under these undisputed facts, the state showed force or use of force. The statute does not define force, but the Illinois Supreme Court has said that that generally means force or violence or the threat of force or violence, and that a threat is a communicated intent to inflict harm or loss on another. The Illinois Supreme Court has said that force need not be physical, but you must show that the victim's mind was operated on. And any ambiguity about force, whether the definition of force in this case should be resolved in Towns's favor under the rule of lenity. Now the state is seeking an expansive reading of the statute, and the facts in this case could potentially support kidnapping under a secret confinement theory, since Towns drove TM to another location, the vacant lot. But that's not the theory that was charged. And this court should reject the state's argument that it showed force or the threat of force. First, the state argues that getting into the car and driving away was the requisite force. But again, the Illinois Supreme Court says in Giroud that force involves violence and threat involves a communicated intent to inflict harm or loss on another. Since TM is asleep throughout the entire act of being carried from one place to another, there is no violence or a communicated intent to inflict harm on her. The state also cites Izuna when it's pointing out that force does not need to be physical. But there, in that case, violence was clearly used. The co-defendant, for whom the defendant was accountable, reached through an open car window and punched the victim. Here, Towns did not display the gun until after TM had been transported to another location. The car was parked and he woke her up. The state's argument on this point also emphasizes the being driven to a vacant lot. But the vacant nature of the lot, that she's taken to another location in this vacant lot, really is more about intent to conceal her than it is about force or use of force. The state also argues that it proved force because TM did not consent to being driven to this other location. The case it cites for this, the main case, is a parental kidnapping case. And there, the law dealt with whether confinement of a child under 13, that was deemed to be against the child's will unless the parent consented. And that's not the issue here. And more importantly, consent really goes to whether she was confined against her will, not whether force was used. The state also cited Earl for this point. And there, the question was whether the force could occur before the kidnapping is still counted as the use of force. And this court said yes, but obviously the court didn't really deal there with the question of consent. And the facts in that case unquestionably showed violence because the defendant dragged the victim to the hedge and then returned to it shortly after and then abducted her. The state also argues that it does not need to show that she was aware of force or the threat of force. But again, if there's no direct violence here, then the state has to show a threat of force. And that's a communicated intent to inflict harm on TM. When she is asleep throughout this entire act, there's no intent to inflict harm being communicated to her. The state cites Morgan for the idea that force doesn't need to be physical. And we don't dispute that, but there the victim was obviously aware of the gun. The victim saw the defendant shoot and kill one person, saw him standing with a gun next to someone else's body, and he still had the gun at the point that he had taken the victim into a hotel room. So there unquestionably, there's a communicated intent and willingness to inflict harm on her. Here TM is asleep the entire time through him getting in the car all the way until he has parked the car and has to wake her up. The state next argues that this court should find adequate force because Towns displayed the gun after he parked the car. And there are robbery cases that find force following a taking to be the requisite force for robbery. But there the rationale is really that the force is used to effectuate the taking, to overcome the victim's resistance. Here the aspiration is already over and the force is being used to accomplish her confinement and to keep her confined against her will. It's not being used to accomplish transporting TM from one place to another. And the state's reading of the statute then would ignore the plain language which requires force or use of force to carry the victim from one place to another. The state's brief also suggests that the sexual assault could constitute the requisite force. It wasn't argued that way to the jury. It was argued to the jury as a display of the gun. But more importantly, the sexual assault is even farther removed from the aspiration. At that point, he's driven the car somewhere else. He's parked. He's got out of the car and walked around to the other side. That's even further removed from the act of carrying her from one place to another. And finally, the state suggests that if this court finds inadequate force or threat of force here, then defendants like TM would escape all liability for kidnapping a drunk, unconscious, or sleeping victim. And that's simply not true. The legislature created three different ways that kidnapping can be committed. And one of those would be secret confinement. So in a case in which a defendant transports a sleeping victim against her will to another location, that could constitute secret confinement. Or even an instance in which the defendant has slipped drugs to the victim and then abducts the victim. That could possibly be the deceit or inducement form of kidnapping. But here, the state charged Towns with aspiratation under that theory. And it has that charging discretion, but it also has to prove the theory that it charged. And here the evidence does not show, the undisputed facts do not show that there was force or the threat of the use of force to carry TM from one place to another. And for all of those reasons, this court should reject the state's arguments that legally this amounts to the force required for aggravated kidnapping and should reverse Towns' aggravated kidnapping conviction and sentence. And I look forward to your questions. This is Bert. You have a question? Sorry, I had to unmute. Okay, so Ms. Konsky, is it your position then that the state could never use the aspiratation theory of a kidnapping if the victim was drunk or drugged or anything that would impair their ability, the victim's ability to understand what's going on? Well, I think obviously that would depend on the particular facts of that case. But I think there's a distinction between someone who perhaps is drunk or half asleep or something. And so the intent to conflict harm could be communicated to them versus somebody who's asleep. They do not have the ability to understand what's being communicated to them. So I guess with the aspiratation theory then be off the table for the state if the victim was mentally retarded or I know that's not the word, mentally impaired or I'm sorry, I know that's a bad word. But there was something else. So suddenly now the state has to prove the victim's mental state at the time in order to use the aspiratation theory? Well, the state would have to show either that some actual force was used. So for instance, dragging a cognitively impaired person down the street. That's the word. So for instance, dragging a cognitively impaired person down the street. Or the state would have to elicit something from the victim. For instance, if the victim in this case had seen the gun, we wouldn't be here on this issue because that would be, her seeing the gun, a jury could find legally that that is a threat of force, a communicated intent to inflict harm. But she's not aware of it. And so it's hard to give you a certain yes or no answer just because it would depend on the facts of that individual case. So I don't want to say the state could never. What about, I know you cited people versus where, which was 1973. Is that the most recent case that you think supports this position? That's the closest one that I found to this sort of scenario. This is essentially an issue that doesn't seem to come up that often, I think, because a lot of the aspiratation cases, the force is so unmistakably clear. Some of the cases I cited in my brief, like Banks and Casiano and Johnson, you have cases where people are threatened at knife point or dragged. So where was the closest to the situation about, well, what if you're not aware of it? How do you distinguish Enoch? I'm sorry? How do you distinguish people versus Enoch? I'm not sure which. I'm not familiar with Enoch. Okay. That's okay. I'll ask the state the same thing. Don't worry. Okay. But I'm happy to do my best if you want to tell me about Enoch. You did great. Okay. This is Reyes. Yes. All right. Counsel, you said there's no kidnapping here because aspiration had concluded. What facts or facts are you making the determination under in terms of the aspiration was over? Well, so for an aspiration, the victim has to be carried from one place to another. In this case, the reason that we can say it was done is because he had driven the car to this other location and parked the car. I'm sorry. What was that? He left one destination and drove to this lot. And he's parking the car at that point. So he has carried her from one place to another. So where's the conclusion of the aspiration? That's my question. In terms of you saying that factually, the aspiration has concluded, right? And then, therefore, the kidnapping theory that the state is pursuing is inapplicable in this case. So that's my question to you. The aspiration concludes when he parks the car, when he goes to this other destination. Now, does it matter if he just pulls over? Does he have to put the vehicle in park? So what concludes the aspiration? I'm not aware of cases that get into, you know, if you carry someone two feet, is that enough? But this is your theory you're bringing forth. So I just want to kind of get an understanding as to what, you know, factually, what's your theory here in terms of when did it happen? I mean, do we know that he actually put the vehicle in park? Did he pull into a parking spot? I mean, what do we know factually? TM testified that he was parking the car, so we know that. I think the state of the lot is I'm not sure there were designated parking spots. But, you know, she testified that she woke up as he was parking the car. So at that point, she's been transported from one place to another. So the aspiration is complete. And you'll agree that in the statute, when we use the word, when the statute uses the word intent, right? It's not what the victim is intending here, but it's what the perpetrator is intending, correct? Correct. We're not disputing the intent to secretly confine our conviction, just the force or use of threat of force. So question I have about where reading where it seems that the court saying that when the victim became aware of the weapon, they became aware of the. I mean, when they had knowledge of the weapon, they became knowledgeable of the threat. But where does it mention anything about being aware of of a threat? All right, because aren't there situations where someone may unknowingly be led into a kidnapping situation and not till they reach the location that they become they become aware that they're kidnapped? So where it doesn't mention anything about an awareness, being aware that you're being kidnapped. It only mentions that once they're presented with the threat, they have the knowledge of the threat. Then, therefore, there's there's use of force. Well, I mean, where the issue isn't whether you're aware that you're being kidnapped, it's whether you're aware of the threat of force or force. But we're arguing that TM wasn't aware. So I think that's a that's a distinction here between this case and and and the people versus where case, because there wants to be once they get had the knowledge of the threat. The court said that was sufficient for there to be force or threat of use of force here. Your argument seems to be more that TM is not aware that she is being forcefully removed from one location to the other. Maybe I'm splitting hairs here, but I think that seems to be a distinction between what people versus where is saying and you know what you're arguing in support of where for your argument. Right. So where is, you know, part of the one of the issues and where was did the state prove force where for the most part, the victims didn't Know about the gun. Until the women are in this apartment that they've been induced to go into and The, you know, this court said, well, that there was enough evidence because the gun was present in the department in the apartment and the, the defendant had demonstrated a willingness to use it. Here, what we're saying is she needs to be if there's no physical force used, then the only way the state can prove the expectation is if there is a threat of use of force. If she's not aware of the gun, which she wasn't, then there's no threat because it's not a communicated intent to inflict harm. Okay. And so you're arguing that the fact that is as soon as she comes to right and she is faced with the weapon. That's after the expectation and therefore it doesn't fall under you what you define as force or use of force under the statute. Right. Absolutely. That is precisely our argument. Okay, right. Oh, no, no more questions. At this point, Let's hear from the state. Okay. Thank you. Good morning. Once again, your honors. I'm assistant state attorney. As I said, Krista Peterson representing the people of the state of Illinois in this matter before the sport. The evidence in this case supports the aggravated kidnapping conviction because the force occurred during the aspiration The victim TM testified and I'm reading from page 259 of the record beginning at line 10 So the first thing I see when I'm waking up as a silver gun in my face question. And when you woke up to see that silver gun in your face. Was the car still moving or was it stopped answer. It was parked. It was being put in the park motion. This is the end of the inquiry as to the force and the expectation for sufficiency purposes, we view the evidence in the light most favorable to the prosecution and the testimony of TM. Is that the car is still in motion and the gun is out the defendant is holding it and pointing it in her face. The expectation is still happening. Therefore, when the force occurs. Now, without even getting to the mental state of the victim or to the series of events analysis established by people. The role and by the armed robbery and vehicular invasion line of cases. The evidence here establishes directly from the victim's testimony that the force occurred during the aspiration that the car is still moving being put into park at the time where she sees the defendant pointing the gun at her. Furthermore, circumstantial. There's a circumstantial imprints that can be drawn that the gun is out the entire time of the expectation, because the first thing the victim sees upon opening her eyes is the defendant holding the gun and pointing it at her. The facts here are that the victim was aware of the force during the aspiration. But even if the victim were not aware of the force. This is still an aggravated kidnapping. The intent of the statute is not to reward this defendant for preying on a sleeping victim. Clearly, even by the defendants own analysis. This is aspiration and force and to read the statute. Narrowly and separate try to separate those two elements would be a mistake and ignores the legislative intent. The statute has to be read consistent with the protection of the victim, whether sleeping unconscious or aware does not eliminate this protection. The Earl case said this in 1982 and the statute has not changed. Kidnapping does not turn on how the victim feels and it turns on the dangerous conduct of the defendant in moving the victim from one place to another and to a place where she becomes at more date in more danger upon being secretly confined. The defendant does not escape culpability because the victim is asleep. There's no loophole in the statute and to read it that way would be an absurd reading that ignored the intent of the statute in the first place. The knowing language of the statute, the mental state is attributed to the defendant, not to the victim. This statute does not require that the victim be conscious, whether the victim knows she is being forced is irrelevant. It is the defendants knowing use of force. The people believe that the discussion ends here with the use of force during the aspiration of the victim TM the defendants unlawful entry into the vehicle and taking of a sleeping victim and moving her from one place to another at gunpoint is an aspiration by force. However, even if the aspiration had just ended and the defendant points the gun at TM when she opens her eyes, this still supports the defendants conviction of aggravated kidnapping. The kidnapping statute is nearly identical to the armed robbery and vehicular invasion statutes in that the force does need to be tied to the aspiration or to the taking or to the intrusion into the motor vehicle with vehicular invasion. There's a whole body of case law, along with Earl as far as kidnapping goes, and then the armed robbery and vehicular invasion statutes that talk discusses force during that theft or during that entry into the vehicle where the force is not exactly during but is part of a whole series of events and that's the analysis that the courts have applied is that series of events that the defendant has put in motion. And that the defendant is not able to separate and put into little boxes, the parts of that series of events that he has put in into motion. And as far as those cases go, Earl is very important because it directly does involve kidnapping. And that's a decision from 1982. And in that case, the court was dealing with a kidnapping based on great bodily harm. The defendant in Earl had had beaten the victim with a crowbar and and then later circled back and removed her unconscious body from where he had left her by putting her in the trunk of a car. The defendant in that case tried to separate his beating and the great bodily harm of that victim from the kidnapping. And that's where the courts from the aspiratation, I should say, and that's where the courts indicated that this was an entire series of events and that the defendant could not separate those actions. Now, I know that in Earl that the injury occurs before the aspiratation, whereas here, arguably, if we are saying that the aspiratation was done and then the defendant displayed the gun for purposes of this argument, the Brooks case is very important. And Brooks dealt with armed robbery. But in Brooks, the defendant takes the victim's wallet from her purse. There's no use of force at that point. But at the moment that the victim becomes aware and sees the defendant holding her wallet when she turns around, the defendant then pushes her in the shoulder and runs from the bus with the wallet at that point, employing the force. So at the moment, the idea is that this defendant is ready to use force. The threat of force is there the entire time. And as soon as there is any challenge to the taking or to the movement or to the intrusion, the defendant uses that force. So at the moment that TM opens her eyes, the defendant points the gun at her and uses that force. And the defendant does not get rewarded for the fact that this victim was asleep for the beginning and that as soon at the moment she became aware of the force of what was happening to her, that the defendant then points the gun at her. The force is part of the aspiration the same way it is in Brooks for the armed robbery, the same way it was in Earl as to the kidnapping and into the other cases that we cited in our brief. The series of events and the sum of the defendant's actions, the defendant cannot divide those up and put them in separate categories for his benefit or to escape culpability. Now, we could have charged secret confinement in this case, but just because we could have charged this another way does not mean that it was charged wrong. The facts support the way that this case was charged. It was charged based on this defendant's actions. And so, I'm going to move on to the next case. This is a case where the defendant is in a car and she sees a gun in her hands. He moves TM from one place to another. The defendant entered the vehicle where she slept without consent at 2 a.m. armed with a gun. He then moved that vehicle from a well-lit establishment to a dark, abandoned lot while he had a gun in his hand. And at the moment, her eyes were opened. Our first argument is that the gun's out the whole time or that in the least, the car is still in motion when she sees the gun. But even if we move past that, at the moment she opens her eyes, the defendant's pointing a gun in her face. This is force, aspiration by force. It also can be secret confinement, but it doesn't make it wrong the way that it's charged. It's supported by the facts. There are many different ways to establish defendant's forceful aspiration of TM. And the statute does not only say force, but also threat of force. And defendant having the gun at the ready, with that, we can infer that defendant was ready to use force at any time, even when the gun is not pointed at the victim's face. The presence of the gun is the threat of force. And defendant's entering and taking of the car is a demonstration of that force. But it's the people's position that you do not even need to get that far because the victim's own testimony establishes that the force occurred during the aspiration. And for those reasons, Your Honors, and those expressed in our brief, we ask that you affirm the defendant's conviction as well as sentence in this case. Thank you. There may be an argument there that maybe she acquiesced, she consented, but there was a lack of awareness that, you know, she was being transported from one location to another. And therefore, you know, the charge of kidnapping doesn't apply. Yes, Your Honor, I don't, the, again, the victims, it's the people's position that the victim's awareness or state of mind is not relevant. But it's the defendant's use of force during that aspiration, that the statute is not designed to require a victim to have a certain state of mind or feel a certain way. But in fact, it's the defendant's use of force during that aspiration. And the other fact that they raised with regards to the vehicle being parked, that that concludes the aspiration, but you're indicating that the vehicle was actually, wasn't placed in park, but it was still in movement? Yes, Your Honor, I believe when you, when you read the, when you look at the victim's testimony, as I read it in and view it in the light most favorable to the state, the victim, in answering the question, when you woke up to see that silver gun in your face, was the car still moving or was it stopped? And her answer is it was parked. It was being put in the park motion. So arguably she's saying one thing and then further clarifying it. It was parked, being put in the park motion. And I think when that, when that statement is that the car is still in motion, and certainly when it's viewed in the light most favorable to the prosecution, TM is saying that the car is in motion. It's being put into a park motion when at the time that she sees the silver gun being pointed at her face by this defendant. All right. So my question to that is then given the fact that this is happening, let's just say factually, all right, it's going to be a matter of seconds. Does that matter in terms of whether or not their expectation was still taking place or not? I don't think that it does, Your Honor. And although I believe that the inquiry ends there because of that testimony from TM, I do think that even if we do move past that, that's when Earl and the vehicular invasion and armed robbery lines cases come in by saying that even if those, we interpret that as the expectation ended, then the gun is out. So I think it's important that when she views it, that that use of force at that point, that the defendant doesn't get to separate that from the series of events and that that use of force at that moment is sufficient to show aspiratation by force as well under that theory. All right. Thank you. Thank you. Any other questions? All right, let's proceed with the rebuttal then. All right. Thank you. First, I think it's important to note that this recitation of TM's testimony ignores that on cross-examination, she clarified at page 294 of the record, the car was stopped when she saw the gun. And initially as the car is coming to a stop, she thought it was her friend driving and didn't think anything of it. But more importantly, the state treats this as a standard sufficiency of the evidence analysis. And in fact, this is the legal question of whether under the facts in this case, force was used or the threat of force was used during the aspiration. Giroud looked at a similar legal question when it considered whether sexual assault by an HIV positive defendant without a condom constitute threat or endangerment of the victim's life during the offense. And the court looked at the facts in that case and said, legally, does this amount to threat or endangerment of the victim's life? So this court should be looking at this, Genova, as a legal question, not as a sufficiency challenge the way the state is framing it. Let's see. The state also is relying again on the vehicular invasion and armed robbery cases to say that, you know, there it shows that there's the force is used afterwards. As soon as the defendant meets a challenge, he uses the force. But again, in those cases, and even Brooks, which the state just discussed, force is used to effectuate the taking. Here, the force is used to keep TM in the car, to secretly confine her. It's not used to accomplish the aspiration. And Earl, which the state also discussed, is obviously distinct because by the time the victim is transported, she's unconscious because the defendant has beaten her. He's already used force on her. That's entirely distinct from here, in which they've already gotten to this other location by the time the car has stopped and she's woken up, thinks she's dreaming and goes back to sleep. And then he wakes her up and displays the gun. So that's clearly distinct from Earl. The state also suggests that just the mere fact of being armed would be enough. Like the presence of the gun is enough for a threat. And again, I would point this court to Jerome's language about that that has to be communicated. If she's asleep, she has no idea the gun is there. And the state also says that just the mere act of entering the car was force. But I would again point out that unless there's an actual use of violence or a threat, a communicated intent to commit violence, that isn't enough. And then finally, the state talks about how this is a series of events and emphasizes again the driving her to another location. And that's where she's sexually assaulted. But driving her to the other location and the nature of the lot, what follows once they reach that lot, all goes to intent to secretly confine her. The gun is displayed to keep her from getting out of the car, from escaping. It's not displayed to get her to go from one place to another. And I think the legislature obviously intends to protect a victim. But nonetheless, the legislature included this force element as part of the aspiratation. The first requirement of the aspiratation is that force is used or threatened. And here, under the state's analysis, at best it doesn't happen until the car has already reached its new destination. And at that point, no force has been used or threatened. And so for these reasons, this court should answer the legal question of whether the facts in this case amount to aspiratation and should determine that they do not. The state could have charged the case differently but did not. And this court should reject the expansive reading that they're now asking for to get around their failure to charge the case correctly. Thank you. Any further questions? I have a question. Ms. Kalinsky, is there a case that says the aspiratation theory cannot be used when a child or an infant is the victim? Not that I'm aware of, but you would still have to show some amount of force or use of force. Well, that force or use of force would be directed to somebody else and not a child or infant if they're being kidnapped, correct? Right. Under that scenario, would your argument preclude the use of an aspiratation theory? I don't believe so because depending on the facts of the case, you could certainly have, for instance, a child being snatched out of a stroller or something like that that would clearly use force. Additionally, there are other statutes that could cover the scenario of a child being moved from one place to another. My question is specifically, under this legal theory that you're proposing today, that would preclude the state from using the aspiratation theory when the victim is an infant or a young child? No, not if the state was able to present facts that showed force. I think certainly, too, if you communicated an intent to harm the child to the child's parent or caregiver, if that, I don't think we would be here arguing, doesn't meet the aspiratation requirements. I'm not saying that you could never charge aspiratation in that scenario at all, but that the state would have to still show a forcible taking of the child or a threat of force. Okay, thank you. Okay, well, thank you guys very much. It was a very interesting case, and you'll have an opinion or an order shortly. And the court will now take a recess, and we'll have our other case after that recess.